Filed 11/8/13  Winkler v. Superior Court CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

|  |  |
|---|---|
| TODD WINKLER, | |
| Petitioner, | |
| v. | C072569 |
| THE SUPERIOR COURT OF EL DORADO COUNTY, | (Super. Ct. No. P12CRF0118) |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |

In this proceeding, the People requested the trial court remove retained defense counsel, David Weiner (retained counsel), from representing petitioner Todd Winkler (defendant) because the People believed retained counsel had an "appearance of [] conflict."  Retained counsel was representing defendant on charges he had murdered his wife.

A possible witness at the murder trial was Dean Essenmacher.  Essenmacher spoke to the victim the evening before she was killed and told him the following:  she was planning to fax divorce papers to her lawyer the next day; she was afraid of

1

defendant; and she needed to get a restraining order because one week prior, defendant had told her she would end up like his second wife. Many months prior to this conversation, the victim told Essenmacher she thought defendant killed his second wife.

The appearance of conflict was the following: Eight and one-half years before defendant's murder charge, Essenmacher was arrested for sodomy in concert and anal and genital penetration. Essenmacher paid retained counsel, met with him for "[a]pproximately 30 minutes," and told him about the circumstances surrounding the allegations. The two had no contact after the initial 30-minute meeting. Essenmacher previously had talked to police for "[a]bout an hour." Essenmacher was truthful with both retained counsel and police and told both the same information. Retained counsel received no confidential information from Essenmacher. No charges were ever filed against Essenmacher. Defendant signed a waiver stating he "waive[d] all conflicts and the right to separate counsel."

The court held a hearing on the People's request to remove retained counsel from the murder case. The People argued they "have no beef against [retained counsel] representing [defendant]. We just don't want this to come back on appeal, and we don't want any appearance of impropriety by any type of representation that [defendant] can get." The court ruled as follows: "I reluctantly find that there is a potential conflict that is a real conflict between [retained counsel] and [defendant]. [¶] I'm mindful that the Defendant wants to keep [retained counsel] as his counsel. I'm also of the view that the conflict potential cannot be waived. It's serious enough that it is a problem and, therefore, the Court would relieve you as counsel of record." In so ruling, the court noted the following: "the People's concern is a legitimate concern" because if defendant was convicted, his "appellate lawyer will simply say, '[Retained counsel]' was not effective. He didn't go after [Essenmacher] vigorously enough. That's the problem . . . ."

Defendant (through appointed counsel) filed a petition for a writ prohibiting the trial court from removing retained counsel and mandating it reinstate retained counsel.

2

This court issued an alternative writ and stayed all proceedings in the case, including enforcing the order removing retained counsel. As explained below, we issue a writ of mandate requiring the trial court to set aside its order removing retained counsel because there was no evidence of a potential conflict.

DISCUSSION

"A criminal defendant is guaranteed the right to the assistance of counsel by the Sixth Amendment to the United States Constitution and article I, section 15 of the California Constitution." (*People v. Doolin* (2009) 45 Cal.4th 390, 417.) The constitutional guarantee of the right to the assistance of counsel "comprehend[s]" "the right to select and be represented by one's preferred attorney." (*Wheat v. United States* (1988) 486 U.S. 153, 159 [100 L.Ed.2d 140, 148].) "[T]he right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." (*Powell v. Alabama* (1932) 287 U.S. 45, 53 [77 L.Ed. 158, 162].) While this constitutional guarantee is not absolute, the Sixth Amendment has a "presumption in favor of counsel of . . . choice." (*Wheat*, at pp. 168 [100 L.Ed.2d at p. 155].)

The United States Supreme Court has articulated both the standard a trial court must use in evaluating whether to accept a defendant's waiver of his right to conflict-free counsel and the standard an appellate court must use in evaluating the trial court's decision. The trial court "must recognize a presumption in favor of [defendant's] counsel of choice, but that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." (*Wheat v. United States*, *supra*, 486 U.S. at p. 164 [100 L.Ed.2d at p. 152].) On appeal, the reviewing court must allow the trial court "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." (*Id*. at p. 163 [100 L.Ed.2d at p. 151].) Thus, the question we must ask here is whether the trial court abused its

3

discretion when it rejected defendant's waiver of conflict of interest because there was a potential for conflict. As we explain, because there was no evidence of a potential for conflict, we will mandate the trial court set aside its order removing retained counsel.

The trial court accepted as "legitimate" the People's concern of an appellate challenge to defendant's possible future conviction based on ineffective assistance for failing to vigorously cross-examine Essenmacher if retained counsel were allowed to represent defendant. The problem with the People's concern is, as this court has recognized, "even prior direct contact between an attorney and the former client does not necessarily result in disqualification when the attorney subsequently represents an adverse party, as long as the contact was not substantially likely to have compromised client confidences." (*Adams v. Aerojet-General Corp.* (2001) 86 Cal.App.4th 1324, 1335.) The California Supreme Court has more recently explained the relationship between client confidences and potential conflicts. "A conflict *may* arise if a former client is a witness in a new case because the attorney is forbidden to use against a former client any confidential information acquired during that attorney-client relationship. [Citation.] *But if the attorney possesses no such confidential information, courts have routinely held that no actual or potential conflict of interest exists.*" (*People v. Cox* (2003) 30 Cal.4th 916, 949, first italics original, second italics added, overruled in part on other grounds in *People v. Doolin*, *supra*, 45 Cal.4th at p. 421, fn. 22.) The Supreme Court in *Cox* then gave examples of three of its cases where it held no conflict existed because trial counsel possessed no confidential information stemming from his prior representation of prosecution witnesses or a codefendant. (*People v. Cox*, *supra*, 30 Cal.4th at pp. 949-950, citing *People v. Lawley* (2002) 27 Cal.4th 102, 145-146 [the California Supreme Court upheld the trial court's ruling that no conflict existed, given that advisory counsel possessed no confidential information stemming from his prior representation of a prosecution witness in several factually unrelated cases]; *People v. Clark* (1993) 5 Cal.4th 950, 1001-1002 [the California Supreme Court held that no actual

4

or potential conflict existed where the public defender possessed no confidential information stemming from his prior representation of three prosecution witnesses]; *People v. Belmontes* (1988) 45 Cal.3d 744, 774-777 [the California Supreme Court held the record did not establish that counsel had an actual or potential conflict of interest stemming from his firm's prior representation of the codefendant, because the attorney possessed no confidential information stemming from that earlier representation].)

Here, retained counsel specifically stated he had no confidential information about Essenmacher. And the People alleged only there was an "appearance of impropriety" based on the People's concern that future appellate counsel for defendant (if defendant was convicted because of the murder charges) would simply say that retained counsel did not go after Essenmacher vigorously enough. However, there is nothing in the record to show that retained counsel could not effectively cross-examine Essenmacher. Indeed, retained counsel had no confidential information acquired during the former representation. As such, we find no evidence of a potential conflict of interest, and the trial court must set aside its order removing retained counsel.

### DISPOSITION

Let a writ of mandate issue requiring the trial court to set aside its order removing retained counsel. The stay of proceedings previously issued by this court is vacated and the alternative writ is discharged.

                                                              ROBIE     , J.

We concur:

     NICHOLSON   , Acting P.J.

     DUARTE    , J.